IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SAMUEL HAMLET, :
   Petitioner :
  :
   v. : CIVIL ACTION
  :
IMMIGRATION AND : NO. 02-3821
NATURALIZATION SERVICE :
   Respondent :

## **ORDER**

    AND NOW on this _____ day of _____, 2002, upon consideration of the Government's Response to Petitioner's Writ of Habeas Corpus, and any response thereto, it is hereby ORDERED that the Petition is dismissed with prejudice.

_____
U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL HAMLET, | : | |
|    Petitioner | : | |
| | : | |
|    v. | : | CIVIL ACTION |
| | : | |
| IMMIGRATION AND | : | NO. 02-3821 |
| NATURALIZATION SERVICE | : | |
|    Respondent | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**PETITIONER'S WRIT OF HABEAS CORPUS**

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Susan Becker, Assistant United States Attorney for the District, on behalf of defendant, the Immigration and Naturalization Service ("the Service"), files this response in opposition to the petitioner's writ of habeas corpus.

**I.     BACKGROUND**

This is a habeas petition brought under 28 U.S.C. § 2241 by Samuel Hamlet, a native and citizen of Dominica, who contests his detention by the Service while awaiting his removal from the United States. Hamlet entered the United States as a lawful permanent resident on February 13, 1988. (See Exhibit 1). On September 19, 1990, Hamlet was convicted in New York of criminal possession of stolen property in the fourth degree and sentenced to five years probation. (See Exhibit 2). On May 23, 1994, Hamlet was convicted in New York of criminal possession of a weapon in the third

degree and sentenced to 2 to 4 years in prison. (See Exhibits 1 and 3). Also on May 23, 1994, Hamlet was convicted of criminal sale of a controlled substance in the third degree, and sentenced to four and three-quarters to nine and one-half years in prison, to run consecutively with the sentence for the weapons conviction. (See Exhibit 4).

On October 11, 1994, the Service issued an Order to Show Cause and Notice of Hearing, advising Hamlet that he was deportable from the United States based on his 1994 firearms conviction, pursuant to Section 241(a)(2)(C) of the Immigration and Nationality Act ("the Act").[1] (See Exhibit 1). On October 22, 1996, an Immigration Judge ordered Hamlet deported to Dominica. (See Exhibit 5). Hamlet appealed to the Board of Immigration Appeals ("BIA") for relief from deportation. The BIA denied Hamlet's request for relief on June 24, 1997. (See Exhibit 6).

On or about April 24, 2000, upon completion of Hamlet's jail term for his state criminal convictions, the Service took Hamlet into custody in order to carry out the order of removal. Since that time, Hamlet has pursued numerous avenues to attempt to delay or overturn his deportation decision.

On May 18, 2000, Hamlet filed an application to become a United States citizen, on the basis that he had derived citizenship from his naturalized father. The Service denied the naturalization application on May 25, 2000. (See Exhibit 7). On or

---

[1] This section has been renumbered since that time, and now is found at Section 237(a)(2)(C) of the Act [8 U.S.C. §1227(a)(2)(C)].

about October 2, 2000, Hamlet filed a habeas petition in the Southern District of New York. (See Exhibit 8, fn.1). Hamlet also filed what he termed a Petition for Review in the Third Circuit Court of Appeals. On January 18, 2001, the Third Circuit denied his Petition for Review, but construed the filing as a petition for writ of habeas corpus, and transferred the case to the Middle District of Pennsylvania, where the case became Civil Action No. 01-0138. The Third Circuit granted a stay of Hamlet's deportation until the District Court decided the merits of his petition. (See Exhibit 9). Then, on April 11, 2001, the Chief Judge Mukasey of the Southern District of New York transferred the New York habeas petition to the Middle District of Pennsylvania, and also granted Hamlet a stay of his deportation. (See Exhibit 8). The New York case was eventually consolidated with Civil Action 01-0138. (See Exhibit 9, last page). Hamlet has been actively litigating his habeas petition in the Middle District of Pennsylvania, where the case is still pending. (See docket for 01-cv-0138 attached at Exhibit 9). Moreover, on July 30, 2001, Hamlet filed a motion to reopen his removal proceedings with the Board of Immigration Appeals. (See Exhibit 10).

Hamlet is currently detained at Berks County Prison, which is located within the Eastern District of Pennsylvania. On June 17, 2002, Hamlet filed the instant habeas petition, in which he challenged his detention by the Service during these removal proceedings. Hamlet's most recent habeas petition notably omits any mention of his pending litigation, or the two stays of deportation that are in effect on his behalf.

## II. LEGAL ARGUMENT

A. <u>Hamlet's Detention is Lawful Under Both The Act and the Supreme Court's Decision in Zadvydas v. Davis.</u>

Under the immigration law in effect since April 1, 1997, once Hamlet's deportation order became final, the Attorney General had a period of 90 days to remove him. See 8 U.S.C. § 1231(a). The 90-day term is referred to as the "removal period." The removal period starts at the latest of three points: the date the order becomes administratively final; the date of any reviewing court's final order; or the date the alien is released from criminal confinement. See 8 U.S.C. § 1231(a)(1)(B)(i)-(iii). During the removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2).

Because Hamlet was in state custody in June, 1997, when his order became "administratively final," his removal period could not have commenced prior to his release from prison on April 24, 2000; 8 U.S.C. § 1231(a)(1)(B)(iii). In other words, the removal period does not start until the Service has an opportunity to deport the alien, and realistically the agency had no chance to deport him while New York held him. But this is not to say that the removal period in Hamlet's case started on April 24, 2000, either. If a court issued a stay in response to a habeas petition, the removal period starts when the stay is lifted. 8 U.S.C. § 1231(a)(1)(B)(ii).

In <u>Zadvydas v. Davis</u>, *supra,* the Supreme Court addressed the issue of the temporal limits of detention of an alien under a final order of removal. The <u>Zadvydas</u> petitioner had been admitted for permanent residence but had been ordered deported following criminal convictions. Because Zadvydas was actually "stateless" (he had been

-4-

born in a displaced persons' camp in Europe just after the Second World War), no country would agree to take him. The Court held that Zadvydas' continued detention was not permissible absent some showing that he could be removed.[2]

In so holding, the Zadvydas Court set up a framework to analyze "post-order" detention claims by aliens. The Court, relying on the erstwhile 8 U.S.C. § 1252(c)-(d)(1994)(repealed), prescribed a presumptive period of post-order detention of six months. After six months, if an alien can show the court "good reason to believe that there is no likelihood of removal in the reasonably foreseeable future," the government must then rebut the alien's showing to continue detention. 121 S.Ct. at 2505. The Court was careful to note that "[t]his 6-month presumption, of course, does not mean that very alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.[3]

---

[2] Hamlet cites the Third Circuit's recent decision in Patel v. INS, 275 F.3d 299 (3d Cir. 2001) to support his claim that he should be released. This case is inapplicable because Patel applies to aliens who are in detention before a final removal order, and are detained pursuant to Section 236(c) of the Act [8 U.S.C. § 1226(c)]. See Patel, 175 F.3d at 302 ("the only issue before us is whether appellant, and aliens in his position, can be mandatorily detained pending a final determination on removal . . . ." (emphasis added). Since Hamlet has already had a final order of removal issued against him, Zadvydas is the controlling case.

[3] The 1996 amendment provided for mandatory detention during the 90-day removal period; 8 U.S.C. § 1231(a)(2). The Zadvydas

Following the Zadvydas decision, aliens ordered removed who had prolonged their detention by filing for judicial stays of removal promptly filed habeas petitions, arguing that Zadvydas set out a *per se* rule that their release was mandated after six months. The courts considering these claims have rejected them; Duran v. Elwood, 2001 WL 902779, *1 (E.D.Pa. Aug. 7, 2001)(R. Kelly, J.); Marcelus v. INS, 2002 WL 80301, *1 (E.D.Pa. Jan. 16, 2002)(Waldman, J.); Copes v. McElroy, 2001 WL 830673, *6 (S.D.N.Y. Jul. 23, 2001); Lawrence v. Reno, 2001 WL 812242, *1 (S.D.N.Y. Jul. 18, 2001).

The government's position is that the six month period must be consecutive and unhampered or uninterrupted, either by judicial stays or conniving by the alien. Balogun v. INS, 9 F.3d 347, 350 (5th Cir. 1993)(alien who frustrates deportation by conniving with his consulate equitably tolls detention period); Ogorodnikov v. INS, 995 F.2d 1063, 1993 WL 192766, **2 (4th Cir. Jun. 7, 1993)(six month period must be "free and clear" of judicial stays); Riley v. Greene, 149 F.Supp.2d 1256, 1261 (D.Colo. 2001)(same); Prari v. INS, 855 F.Supp. 64 (S.D.N.Y. 1994)(same). In other words, six

---

Court held that a presumptively reasonable period of detention following the final order is six months. 121 S.Ct. at 2504-05. It is not clear if the Zadvydas holding simply read the 90-day "mandatory detention" removal period out of the law and replaced it with a six-month period, or whether the six months follows the 90-day removal period. Cf. Borrero v. Aljets, 178 F.Supp.2d 1034, 1040-41 (D. Minn. 2001) (six months follows 90-day period; Guner v. Reno, 2001 WL 940576, *1 (S.D.N.Y. Aug. 20, 2001)(same). For purposes of this petition, the government assumes the period is the six months immediately following the time the alien comes into custody pursuant to a final order with no judicial stays pending.

months in the aggregate, interspersed with judicial stays, cannot effectuate the purposes of Congress or comport with the Zadvydas holding.

The Service obviously cannot carry out Hamlet's deportation while there are not just one, but two judicial stays in effect. Under these circumstances, Zadvydas cannot help him. Hamlet stepped up his efforts to challenge his deportation within weeks after coming into Service custody. The stays were issued in response to Hamlet's judicial filings, and thus he is the cause of his present detention and the removal period is tolled. The government has not had six unhampered months to remove him, and under Zadvydas, his continued custody is lawful. The Service has a travel document for Hamlet and will be able to carry out his removal as soon as the litigation instigated by Hamlet is resolved. (See Exhibit 11, pp. 1 and 5).

In any event, the Service has followed its procedures for reviewing Hamlet's custody status while he is detained pending deportation. In reviewing an alien's case for continued detention or release:

> The district director may consider, but is not limited to considering, the following factors: (1) The nature and seriousness of the alien's criminal convictions; (2) Other criminal history; (3) Sentence(s) imposed and time actually served; (4) History of failures to appear for court (defaults); (5) Probation history; (6) Disciplinary problems while incarcerated; (7) Evidence of rehabilitative effort or recidivism; (8) Equities in the United States; and (9) Prior immigration violations and history.

8 C.F.R. § 241.1(a).

On December 19, 2001, the District Director reviewed Hamlet's custody status and determined that Hamlet should remain in Service custody. (See Exhibits 11 and 12). The custody review process has now been transferred to the Service's Post-Order Headquarters Detention Unit, which issued a Decision to Continue Detention on January 21, 2002. That decision noted that the Service was in possession of a travel document necessary to repatriate Hamlet to Dominica, and would do so upon completion of Hamlet's court proceedings. The decision also noted that Hamlet could bring forth evidence, if any exists, to demonstrate that the Service would not be able to carry out his repatriation. (See Exhibit 13, p.1).

Once all of Hamlet's litigation on the merits of his removal has been resolved, if he is still in Service custody after six "free and clear" months, he may then petition for a writ of habeas corpus challenging his detention. In the interim, this petition should be dismissed.

III.  **CONCLUSION**

Petitioner Hamlet cannot establish any violation of the Constitution or statutes of the United States, and there is no basis for the Court to grant the relief he requests. For the foregoing reasons, the government respectfully requests that the Court dismiss the Petition with prejudice.

Respectfully,

PATRICK L. MEEHAN
United States Attorney

_____
JAMES G. SHEEHAN
Assistant United States Attorney
Chief, Civil Division

Dated: July    , 2002

_____
SUSAN R. BECKER
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia PA 19106-4476
(215) 861-8310 Telephone
(215) 861-8349 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the      day of July, 2002, I caused a true and correct copy of the foregoing Government's Response to Petition for Writ of Habeas Corpus to be served by first-class mail, postage prepaid, upon the following:

>Mr. Samuel Hamlet
>A#41 791 380
>*Pro se Petitioner*
>c/o Berks County Prison
>1287 County Welfare Road
>Leesport, PA 19533

_____
Susan R. Becker